IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| VELVA J. HERIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-CV-419 |
| | ) | |
| THE PRUDENTIAL INSURANCE | ) | |
| COMPANY OF AMERICA and | ) | |
| MASTERCRAFT BOAT COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for the recovery of long term disability benefits ("LTD"). Now before the court are "Plaintiff's Motion for Judgment on the Administrative Record" [doc. 10], filed by Velva J. Herin ("Herin"), and "Defendants' Motion for Judgment on the Record" [doc. 14], filed by The Prudential Insurance Company of America ("Prudential") and Mastercraft Boat Company ("Mastercraft'). For the reasons stated herein, defendants' motion will be denied. Herin's motion will be granted and her claim will be remanded to Prudential for further evaluation consistent with this opinion.

I.

*Procedural Background*

Prudential issued to Mastercraft an insurance plan (the "Plan") that provides LTD benefits. [A.R. 001, 029].[1] Mastercraft is the Plan administrator. [A.R. 052]. Prudential is the claims administrator. [A.R. 052].

Herin was formerly employed by Mastercraft as a lamenator and was covered by the Plan. [A.R. 059]. She filed a claim for benefits in December 2003, advising that she could not work due to what she termed "seizures" or a "movement disorder." [A.R. 059-63]. After initially denying the claim [A.R. 250], Prudential eventually determined that Herin was entitled to LTD benefits effective August 24, 2003, due to "a possible diagnosis of small fiber neuropathy." [A.R. 259-61].

The Plan establishes two LTD phases:

[Initially], [y]ou are disabled when Prudential determines that:

> you are unable to perform the material and substantial duties of *your regular occupation* due to your sickness or injury; and
>
> you have a 20% or more loss in your **indexed monthly earnings** due to that **sickness** or **injury**.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of *any **gainful occupation*** for which you are reasonably fitted by education, training or experience.

---

[1] References to "A.R." indicate a page or pages of the administrative record.

2

> . . .
>
> We *may* require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We *can* require examinations *as often as it is reasonable to do so.*

[A.R. 030] (bold in original, italics added).

By letter dated August 23, 2005, applying the "unable to perform the duties of any gainful occupation" standard, Prudential notified Herin that her LTD benefits would be terminated effective immediately, as the initial twenty-four month period had expired. [A.R. 276]. Herin submitted a request for reconsideration. Prudential again concluded that she does not meet the "unable to perform any reasonable occupation" standard [A.R. 288], following Herin's submission of additional medical records and following a file review by neurologist Susan Pierson. [A.R. 342-45].

Herin then filed a second administrative appeal and again submitted additional medical records. After Dr. Pierson's second file review [A.R. 348-50], Prudential issued its final denial by letter dated June 26, 2006. [A.R. 296]. This action followed.

II.

*Standard of Review*

In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101 (1989), the United States Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms

3

of the plan." *Id*. at 115. However, if a plan grants the administrator or fiduciary the appropriate discretionary authority, this court must review the decision at issue under the "highly deferential arbitrary and capricious standard of review . . . ." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). A plan's grant of discretionary authority to the administrator or fiduciary must be "express." *See Perry v. Simplicity Eng'g,* 900 F.2d 963, 965 (6th Cir. 1990).

The Plan language cited in section I of this opinion, defining "disability," clearly and expressly grants Prudential sole discretion in determining benefits eligibility. [A.R. 030]. The Summary Plan Description further states that Prudential "has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." [A.R. 52-53]. The court concludes that the grant of discretion to Prudential in this case is sufficient to trigger the arbitrary or capricious standard of review, and Herin makes no meaningful argument to the contrary.

Herin does correctly note that there is an inherent conflict of interest in this case because Prudential is the decision maker for LTD claims as well as the entity that pays benefits. However, the existence of such a conflict does not alter the standard of review. *Marchetti v. Sun Life Assurance Co. of Can.*, 30 F. Supp. 2d 1001, 1007 (M.D. Tenn. 1998). Rather, the administrator's conflict of interest is a factor to be considered by the court in its review of the administrative decision. *See id.; Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991).

4

The court will accordingly consider this inherent conflict of interest as a factor in determining whether Prudential's decision was arbitrary or capricious. Additional relevant factors that the court will consider include Prudential's choice to employ a file review rather than a physical examination, *see Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005), and the depth of Prudential's consideration of the Social Security Administration's finding of disability. *See Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006).

III.

*Administrative Record*

Herin consulted with neurologist John Fang in February 2003 due to complaints of tremors. [A.R. 323]. She reported intermittent "jerking episodes" that began in August 2002, with corresponding episodes of weakness. [A.R. 323-24]. Herin told Dr. Fang that her symptoms began shortly after the anniversary of her father's death, which had "caused her to feel quite depressed." [A.R. 324]. While Dr. Fang observed "slight truncal shaking" in Herin's gait, he otherwise found "no hyperkinetic movement or other abnormal movement evident during today's examination." [A.R. 326]. He also found Herin's short-term memory to be intact. [A.R. 326]. Dr. Fang wrote, "She has also noticed some odd total body jerking which she said that she has had video taped, but unfortunately, the video tape was not available today." [A.R. 324]. Dr. Fang invited Herin to supply him with a copy of the video for his review [A.R. 327], but the record does not indicate that Herin ever produced the tape. Dr. Fang hypothesized that the tremors might be related to an iron deficiency, and

5

that her fatigue could be related to depression. [Ar. 321, 326].

Herin first visited Dr. Choudhury Salekin in May 2003. [A.R. 101].[2] Dr. Salekin diagnosed "solvent induced convulsion/seizure" disorder and lumbar sacral radiculopathy secondary to disc injury. [A.R. 367]. Dr. Salekin also found Herin's short-term memory to be partially impaired. [A.R. 102, 358, 360].

On November 10, 2003, treating physician Jeffrey Robinson noted "some odd type of clonic jerks." [A.R. 301]. At other times, however, Herin has reported improvement. For example, in January 2004, she told Dr. Robinson that she only experienced three seizures in 2003. [A.R. 300]. In April and May 2004, Herin's tremor condition was deemed "stable." [A.R. 131, 134]. Dr. Robinson has diagnosed "[s]eizure disorder most likely secondary to solvents at Mastercraft." [A.R. 302, 310]. Admittedly, however, he has "not ha[d] a lot of information about the treatment that her specialists are giving her." [A.R. 302]. Dr. Robinson has alternatively opined that Herin may be suffering from "[p]ossible arsenic poisoning" or "[g]eneralized anxiety disorder." [A.R. 134, 136-37, 301]. In August 2003, Dr. Robinson recommended "that she continues to receive disability compensation in the midst of a complicated medical work-up." [A.R. 468].

In December 2003, Dr. Robinson completed a questionnaire provided by Herin's Social Security attorney. In response to the question, "Have you or any member of

---

[2] Dr. Salekin's curriculum vitae identifies him as the "Director of Sleep Disorder and Sleep Research Center, Chief Section of Neurology" at the Alvin C. York VA Medical Center in Murfreesboro, Tennessee. [A.R. 370].

6

your staff ever witnessed this patient during a seizure?", Dr. Robinson answered in the affirmative and provided five dates. [A.R. 192]. There are no medical records in the present file corresponding to three of those dates. Dr. Robinson's notes for the fourth date - February 25, 2003 - make no mention of seizures actually having been observed. In fact, Herin was described that day as being "in no acute distress." [A.R. 303].[3] On the fifth date - November 10, 2003 - Dr. Robinson as noted observed "some odd type of clonic jerks." [A.R. 301].

Physical therapist Baron Johnson performed a functional capacity assessment in May 2004. [A.R. 90-100]. Herin demonstrated minimal to no ability in numerous functional tests. Mr. Johnson concluded,

> Based on the strength classifications as established by the Dictionary of Occupational Titles, Ms. Herin is currently unable to return to work at any capacity. Her maximum lifting capacity is 5.0 pounds. She is not capable of carrying anything at all. According to the DOT-RFC battery, Ms. Herin must be capable of meeting the Demand Minimal Functional Capacity for both lifting and carrying strength categories in order to return to work at any capacity.
>
> . . .
>
> Ms. Herin demonstrated intention tremors during her limited functional ability. . . . Ms. Herin's tremors increased in intensity as the physical demands of the FCA increased. She went into a 5 minute seizure while performing reaching and standing activities at 14.5 minutes.

[A.R. 100].

---

[3] However, one day prior, emergency room staff observed Herin to be "shaking all over." [A.R. 332].

In September 2004, Dr. William Reid performed back surgery due to a diagnosis of "subligamentous disc herniation L4 left with L5 root compression." [A.R. 117]. Although Herin has continued to report some measure of back discomfort [A.R. 372], the administrative record does not document that she ever returned to Dr. Reid for further treatment.

Herin saw Dr. Salekin again on February 11, 2006. His diagnoses remained the same, with the exception that short-term memory was intact. Dr. Salekin noted some spinal tenderness and reduced sensation. Herin reported continuing episodes of tremors with impaired consciousness occurring five to six times per month. [A.R. 364]. Dr. Salekin completed both a "Questionnaire on Residual Functional Impairment - Physical Impairment" [A.R. 351-55] and a "Standard Form Medical Report for Industrial Injuries" [A.R. 371-75]. Collectively, these documents predict significant limitations which, if credited, would likely appear to preclude most, if not all, full-time employment.

On January 31, 2006, Herin received an administrative hearing regarding her application for Social Security disability benefits. On February 22, 2006, the Administrative Law Judge ("ALJ") issued a decision granting Herin's claim. [A.R. 194-202]. The ALJ concluded that Herin is disabled "as defined in the Social Security Act[.]" [A.R. 202]. The ALJ twice cited Herin's "credible hearing testimony and presentation" [A.R. 200] and concluded his opinion with the statement, "Due to her seizure disorder, the claimant should

avoid driving." [A.R. 202].[4]

At Hartford's request, neurologist Pierson generated her first file review in May 2006. Dr. Pierson did not examine Herin but did partially discuss the medical record in her report. In material part, Dr. Pierson concluded,

> . . . There is not enough data contained in the documentation to support [Dr. Salekin's] diagnosis of encephalopathy and there is no evidence to support that it has a toxic exposure etiology.
>
> Her episodes of jerking of total body were not accompanied by the usual clinical signs of seizure and in fact no epileptic etiology was identified when she had the event while hooked up to EEG[.] [S]he therefore has nonepileptic spells of another etiology, as yet unidentified. . . .
>
> . . .
>
> There is no objective evidence of an underlying pathologic condition which is related to work and therefore no evidence of an underlying disability related to a work related illness or condition.
>
> . . .
>
> There is no evidence contained in the records reviewed which would render the patient unable to work without restrictions.
>
> . . .
>
> The clients [sic] self reported symptoms and conditions are in no way supported by objective evidence of physical dysfunction as might be obtained through objective physical examination . . . diagnostic testing . . . and labs ....
>
> . . .
>
> The medical records do not indicate significant impairment.

---

[4] Herin's attorney contends that she "had a seizure" during the administrative hearing [A.R. 188], but there is nothing in the present record to document that assertion.

[A.R. 342-44].

In Dr. Pierson's second file review, dated June 21, 2006, she again concluded that Dr. Salekin's diagnoses were objectively unsupported. [A.R. 348]. She also again acknowledged that Herin "has non-epileptic spells of another etiology, as yet unidentified." [A.R. 349]. Review of additional medical records did not alter Dr. Pierson's prior conclusion that "[t]here is no evidence" that Herin is incapable of working without restriction. [A.R. 349-50].

IV.

*Analysis*

With regard to the application of the arbitrary and capricious standard, the Sixth Circuit has stated: "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F. 2d 689, 693 (6th Cir. 1989) (citation omitted). The arbitrary and capricious standard "is the least demanding form of judicial review of administrative action." *Id.* In its review of the denial of benefits, this court does not substitute its judgment for that of the administrator. *See Brown v. Nat'l City Corp.*, 974 F. Supp. 1037, 1041 (W.D. Ky. 1997) (citing *Caterino v. Barry*, 8 F.3d 878, 883 (1st Cir. 1993)).

Decisions concerning eligibility for ERISA benefits are not arbitrary and capricious if they are "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). "Before concluding that a decision was arbitrary and

capricious, a court must be confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence." *Marchetti v. Sun Life Assurance Co. of Can.*, 30 F. Supp. 2d 1001, 1008 (M.D. Tenn. 1998) (citing *Wahlin v. Sears, Roebuck & Co.*, 78 F.3d 1232, 1235 (7th Cir. 1996)).

At issue in this case is whether Prudential's discontinuation of LTD benefits under the "any gainful occupation" provision was arbitrary and capricious. For the reasons set forth below, the court finds that it was.

In its final denial, Prudential echoed Dr. Pierson's conclusion that Dr. Salekin's diagnosis was objectively unsupported, and that Herin perhaps suffers from nothing more than "restless leg syndrome . . . based on an iron deficiency." [A.R. 297]. Certainly, the objective evidence in this case is sparse. In the court's view, however, the file review relied upon by Prudential was equally infirm.

Dr. Pierson twice concluded that Herin suffers from "nonepileptic spells of [some] etiology, as yet unidentified." That is a reasonable conclusion in light of the limited objective evidence. However, Dr. Pierson then - inexplicably - determined that Herin is able to work *without any restriction*, despite the acknowledged presence of "nonepileptic spells of [unidentified] etiology." The mere fact that Herin may well have been misdiagnosed by a treating source does not alter the fact that *some* limiting condition likely appears to be present. In effect, Prudential relied on Dr. Pierson's review to dismiss all of Herin's possible limitations via the debunking of merely one potential diagnosis.

11

The court's concern is amplified by three points which Dr. Pierson did not address, leading the undersigned to the conclusion that "the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence." *Marchetti*, 30 F. Supp. 2d at 1008. First, treating physician Robinson stated that he or his staff had witnessed seizure episodes on at least five occasions. Similarly, physical therapist Johnson wrote that Herin "went into a 5 minute seizure" during her functional capacity assessment. Lastly, although the record does not prove counsel's contention that Herin suffered a seizure during her Social Security hearing, the ALJ: (1) awarded benefits; (2) found Herin's testimony *and presentation* to be credible; and (3) atypically concluded his opinion with the statement, "Due to her seizure disorder, the claimant should avoid driving." *See Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006) ("That MetLife apparently failed to consider the Social Security Administration's finding of disability in reaching its own determination of disability does not render the decision arbitrary *per se*, but it is obviously a significant factor to be considered upon review."). Again, none of this evidence was addressed by Dr. Pierson's reports or by Prudential's denial letters, even though it clearly conflicts with the conclusion that there is "no evidence" that Herin cannot work *without any limitation*.

Again, Prudential's choice to employ a file review rather than a physical exam is merely a factor to consider in determining whether the decision was arbitrary and capricious. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). "[T]here is

nothing inherently improper with relying on a file review, even one that disagrees with the conclusions of a treating physician." *Id.* at 297 n.6. However, "the failure to conduct a physical examination - especially where the right to do so is specifically reserved in the plan - may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Id.* at 295. Additionally, when the review contains conclusions that involve "critical credibility determinations regarding a claimant's medical history and symptomology, reliance on such a review may be inadequate." *Id.* at 297 n.6.

The court finds reliance on Dr. Pierson's file review to be inadequate in this case. Prudential essentially used the review to discount Herin's claims by unduly focusing on a single unsupported possible diagnosis - without meaningfully addressing the effects of the (acknowledged) underlying condition. After weighing all of the factors discussed above, the court concludes that Prudential was arbitrary and capricious in its discontinuation of benefits.

V.

*Conclusion*

Once the court finds that an administrator has *substantively* acted arbitrarily and capriciously in discontinuing benefits, the court can either remand the case to the administrator for a renewed evaluation or it can award a retroactive reinstatement. *See Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 621-22 (6th Cir. 2006); *but cf. Wenner v. Sun Life Assurance of Can.*, 482 F.3d 878 (6th Cir. 2007) (addressing the remedy for *procedural*

wrongdoings). Remand to a plan administrator is appropriate "where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled." *Elliott*, 473 F.3d at 622 (internal quotation and citations omitted).

It is not clear from the present administrative record that Herin is entitled to LTD benefits based on the "any occupation" provision on the policy. It is only clear that Prudential acted arbitrarily and capriciously in discontinuing those benefits.

As discussed, Dr. Salekin's diagnosis is minimally supported by objective data. Further, although he wrote in his February 2006 assessments that he treats Herin "about three times a year" [A.R. 351], the record does not document that he saw Herin between August 15, 2004, and February 11, 2006. [A.R. 367, 371]. Also, while Dr. Salekin's testing at times indicated impaired short-term memory, Dr. Fang's testing did not.

As for Herin's back problems, the record does not indicate that she sought any follow-up treatment from her surgeon. It is therefore difficult to conclude that she is "clearly entitled" to benefits based on that condition. Of note, Mr. Johnson's highly limiting functional capacity assessment predates Herin's surgery.[5]

The court further observes that, as discussed above, meaningful portions of Dr. Robinson's file are not available for review. Also, it is striking that Herin failed to provide

---

[5] Herin's counsel argues that she underwent "a functional capacity evaluation conducted by Ms. Erin P. Johnson . . . [a]fter recovering from her surgery[.]" [Doc. 10, p.4]. However, the evaluation was in fact performed by *Baron* Johnson and took place several months *prior to* the surgery.

her purported videotape to neurologist Fang as requested. That choice impacts Herin's credibility.

Dr. Pierson acknowledged the existence of "nonepileptic spells of . . . as yet unidentified" etiology. Examining and treating sources have hypothesized causes as diverse as iron deficiency, solvent exposure, depression, arsenic poisoning, or anxiety. The presence of *some* condition is hardly in doubt, but its nature and effect is. Therefore, further fact finding is necessary for a complete review of Herin's claim, and that fact finding should be conducted by Prudential. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 715 (6th Cir. 2000). To that end, this claim will be remanded to Prudential for a full and fair review.

On remand, it is strongly suggested that Prudential make every effort possible to have Herin personally evaluated by an appropriate qualified physician. The court believes that the circumstances of this case call for a hands-on evaluation, likely by a physician qualified to consider all of Herin's potential diagnoses. It appears that the evaluation should involve some measure of neuropsychological testing.

In its subsequent review, Prudential should also expressly consider the observations of Dr. Robinson, physical therapist Johnson, and the ALJ, as cited herein. Prudential shall also expressly address the SSA decision awarding disability benefits.[6]

---

[6] Mere mention of the SSA decision will not be sufficient. *See Bennett v. Kemper Nat'l Servs., Inc.*, ___ F.3d ___, 2008 WL 183225 at *5 n.2 (6th Cir. Jan. 23, 2008).

## VI.

*Conclusion*

For the reasons stated herein, the present claim will be remanded to Prudential. The court will retain jurisdiction, and the case will be stayed pending Prudential's review and ultimate decision. *See Bowers v. Sheet Metal Workers' Nat'l Pension Fund*, 365 F.3d 535 (6th Cir. 2004). While the court strongly suggests that an appropriate independent medical examination should be conducted, that choice will be Prudential's. However, the defendants are cautioned that should this matter come back before the court, the type of evaluation performed on remand will again be a factor considered in the court's review.

An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan<br>United States District Judge